PROSKAUER ROSE LLP
Lloyd B. Chinn (LC 7953)
1585 Broadway
New York, New York 10036
(212) 969-3000
Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

JOSEPH CARRILLO

                Plaintiff,

    v.

THE FORD FOUNDATION

                Defendant.
-------------------------------------------------------X

06 Civ 4040 (RMB)(MHD)

**NOTICE OF REMOVAL**

Supreme Court of New York,
County of New York
Index No. 06/105780

      Defendant, The Ford Foundation (the "Defendant"), by its attorneys, Proskauer Rose LLP, respectfully gives notice of removal of this action from the Supreme Court of the State of New York, County of New York, to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, and state as follows:

    1.    On or about April 27, 2006, Plaintiff commenced this civil action against the above named Defendant by the filing of a Summons and Verified Complaint ("Complaint"). A copy of the Complaint is annexed hereto as Exhibit A.

    2.    On or about April 28, 2996, defendants were served with a copy of the Complaint.

    3.    The First Claim in the Complaint alleges that the Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* Complaint ¶¶ 26-30.

4. Pursuant to the First Claim, Plaintiff seeks relief pursuant to 42 U.S.C. §§ 2000e *et. seq.*, compensatory and punitive damages pursuant to 42 U.S.C. § 1981(a)(b)(3)(B) and attorneys fees and costs pursuant to 42 U.S.C. § 2005e-5(k) and 42 U.S.C. § 1988. Complaint pp. 9-10.

5. The Court has original jurisdiction over this action pursuant to 28 U.S.C. §1331 in that, pursuant to the First Claim, the matter is one arising under the Constitution, laws or treaties of the United States. As a civil action founded on a right or claim arising under the laws of the United States, this action is properly removable to this Court pursuant to 28 U.S.C. §1441(a) and (b) without regard to the amount in controversy or the citizenship of the parties.

6. Pursuant to 28 U.S.C. 1441(c), Defendant can remove all of Plaintiff's claims alleged in the Complaint including the state and common law causes of action.

7. Pursuant to 28 U.S.C. § 1441(a), Defendant has the right to remove this case from the Supreme Court of the State of New York, County of New York to this Court because the District Court for the Southern District of New York is the District embracing the place where the action is pending.

8. This Notice of Removal is being filed within thirty (30) days after the receipt by Defendant of the Complaint and is timely filed pursuant to 28 U.S.C. § 1446(b).

9. Promptly after filing this Notice of Removal, a true copy of this Notice will be filed with the Clerk of the Supreme Court of the State of New York, County of New York pursuant to 28 U.S.C. § 1446(d).

10. Written notice of the filing of the Notice of Removal will be given to Plaintiff pursuant to 28 U.S.C. § 1446(d)

11.  By filing this Notice of Removal, Defendant does not waive any defenses which may be available.

WHEREFORE, Defendant respectfully requests that this action proceed in this Court as a matter properly removed thereto.

Dated: May 26, 2006
New York, New York

PROSKAUER ROSE LLP

By: _____
Lloyd B. Chinn (LC-7953)
1585 Broadway
New York, New York 10036
(212) 969-3000

Attorneys for Defendant

TO: GOETZ FITZPATRICK LLP

Jack L. Most, Esq.
One Penn Plaza, 44th Floor
New York, New York 10119
(212) 695-8100

Attorneys for Plaintiff

# EXHIBIT A

REC'D INTEROFFICE ON 5/5/06
PERS
DOCK'D ☒ DIAR'D ☒ BY RHM

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------------------------------X
JOSEPH CARRILLO,

                Plaintiff,

    - against -

THE FORD FOUNDATION,

               Defendants.
---------------------------------------------------------------X

To the above named defendant:

Date Purchased:
Index No.  06105780

**SUMMONS**

Plaintiff's address:
16 Edgemont Road
Glen Rock, NJ 07452
Basis for Venue:
Defendant's Residence

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the plaintiff's attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
April 19, 2006

FILED APR 27 2006 NEW YORK COUNTY CLERK'S OFFICE

Yours, etc.,

GOETZ FITZPATRICK LLP

By: _____
Jack L. Most
Attorneys for Plaintiff
One Penn Plaza, 44th Floor
New York, New York 10119
(212) 695-8100

Served 4/26

**Defendant's Address**:

The Ford Foundation
320 East 43rd Street
New York, New York 10017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------X
JOSEPH CARRILLO,

                Plaintiff,

    - against -

THE FORD FOUNDATION,

               Defendant.
-------------------------------------------------------------X

Index No.

Date Purchased:

**VERIFIED COMPLAINT**

06105780

Plaintiff Joseph Carrillo, by his attorneys, Goetz Fitzpatrick LLP, alleges as follows:

1. This is an action for declaratory relief, back pay, front pay, compensatory and punitive damages, attorneys fees, costs and other relief to redress employment discrimination based on race. This action is brought pursuant to New York Executive Law Article 15 [Human Rights Law], § 296 ("NYSHRL"), and Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e-5(f)(1), to enforce the provisions of 42 U.S.C. § 2000e-2(b) (collectively "Civil Rights Act").

**Parties**

2. Plaintiff Joseph Carrillo ("Carrillo") is a resident of Bergen County, New Jersey. He resides at 16 Edgemont Road, Glen Rock, New Jersey 07452.

3. Defendant The Ford Foundation (the "Foundation") is a Michigan not-for-profit corporation doing business in New York with a principal place of business at 320 East 43rd Street, New York, New York 10017.

3

## Administrative History

4. Carrillo filed a charge of discrimination based on race with the Equal Employment Opportunity Commission ("EEOC") on February 9, 2006, which was within 300 days of the last incident of racial discrimination. A copy of the filed charge is attached hereto as Exhibit A.

5. On or about February 28, 2006 Carrillo received a "Notice of Right to Sue" letter from the New York District Office of the EEOC. This Complaint has been filed within 90 days of the receipt of that letter. A copy of the letter is attached hereto as Exhibit B.

## Factual Background

6. Carrillo, a Caucasian male, began his employment with the Foundation on March 11, 1996, as the Building Services Manager. Carrillo is qualified to perform the duties of his position and has always received outstanding performance evaluations and accomplishment assessments, obtaining the highest rating used by the Foundation.

7. The Foundation terminated Carrillo's employment on November 2, 2005, for an alleged technical violation of a Foundation procedure. The termination was carried out by Sandra Harris ("Harris"), an African-American and the supervisor of Carrillo's immediate supervisor.

8. Upon information and belief, Carrillo's immediate supervisor, Hank DePerro ("DePerro"), was not in favor of Carrillo's termination, believing it was unwarranted.

9. The Foundation, through Harris, claims it terminated Carrillo because of an alleged breach of accounting procedures. Carrillo repeatedly requested clarification, but none was given.

10. Upon information and belief, the alleged breach of accounting procedures involved Carrillo's request to expense an incoming mail tracking system in the same year it was purchased. The Department purchased the system in August, 2005, and anticipated delivery on or around September 15, 2005.

11. The Foundation's fiscal year ends on September 30th each year, and begins on the first business day in October.

12. In late September, 2005, the vendor contacted Garfield Morris ("Morris"), Supervisor of Mail Services, and informed him that the system would not be delivered until October 3, 2005 or shortly thereafter, but a loaner system would be delivered on September 30th. Morris, at Carrillo's direction and acting in a good faith effort to follow the above Departmental objective, brought the loaner system to the supervisor of the receiving department to be received and expensed in the accounting system. The supervisor refused to receive the loaner system and advised he would only receive the new system when it arrived. On October 3, 2005, the new system arrived and was received and expensed in accordance with accounting procedures.

13. Carrillo and Morris would not have asked the receiving department to accept the loaner unless he had received confirmation from the vendor that the new system would be arriving within a few days.

14. Established Foundation accounting objectives, which pre-existed Carrillo's employment, included using best efforts to expense goods and services in the same year they were ordered.

15. To obtain that objective, Carrillo's department regularly expensed goods

5

and services in the same year they were ordered even though the goods did not always arrive and/or the services were not always performed until the next fiscal year.

16. Throughout his employment, Carrillo and other department employees, under the direction of DePerro, followed that practice because of Foundation pressure to close any budget /fiscal gaps at the end of the year.

17. Examples of that practice include: (1) expensing electrical work of $30,000 and $55,000 in the 2005 and 2004 fiscal years even though the work continued months into each respective new fiscal year; (2) expensing a $10,000 consultant's report at the end of the 2005 fiscal year even though as of November 2, 2005, Carrillo's final day of employment and a month into a new fiscal year, the report had not been completed; and (3) expensing purchases of chairs costing $20,000 and $25,000 in fiscal 2003 and fiscal 2004 respectively, even though the chairs were not delivered until weeks into fiscal 2004 and fiscal 2005, respectively.

18. Carrillo's supervisor, DePerro, knew of and approved each instance set forth in paragraph 17 above, in which goods or services were expensed in a fiscal year in which they were not received. Personnel in the financial and accounting departments were aware of the practice.

19. The reason offered for Carrillo's termination is completely pretextual. At all times, Carrillo acted in compliance with departmental practices established and exemplified by DePerro, Manager, Facilities Management, who was Carrillo's immediate supervisor. Morris, one of Carrillo's subordinates and an African-American, was neither terminated nor reprimanded for his participation in the alleged violation resulting in Carrillo's termination.

20. When Carrillo's African-American subordinates had problems with their

performance, Carrillo was directed to follow established procedures that afforded them multiple opportunities to improve, including developing plans for performance, identifying areas and opportunities for improvement, additional coaching and probation where necessary.

21. None of the available corrective procedures described in paragraph 20 were afforded to Carrillo after his alleged breach of Foundation procedures. Upon information and belief, had Carrillo been African-American, he would have benefitted from the process described in Paragraph 20 above.

22. The Foundation terminated Carrillo's employment because of his race, in violation of the Civil Rights Act and NYSHRL.

23. Carrillo's termination was only one instance of a pattern of racial discrimination against Caucasians by the Foundation.

24. Other illustrations of that pattern include senior management making it clear to Carrillo on multiple occasions that African-American candidates were to be given preference over better-qualified Caucasian candidates, and senior management electing to ignore repeated complaints of an African-American employee suspected of selling drugs on the job, despite the recommendations of Carrillo and DePerro that action be taken to investigate the matter.

25. Carrillo, as a result of his good faith efforts, has recently obtained other employment, but he has been unable to obtain long-term benefits similar to those he received at Foundation, including generous retirement and lifetime medical benefits for his family. As a benefit of his consistently exemplary performance and dedication, Carrillo hoped one day to retire from the Foundation with a secure future for his family. Additionally, the five months

7

Carrillo was unemployed resulted in severe economic and emotional hardship for him and his family.

## FIRST CLAIM
### (Title VII of the Civil Rights Act of 1964)

26. Carrillo realleges paragraphs 1 - 25 as if set forth herein.

27. The Foundation's acts described herein constitute willful discrimination with malice and/or reckless indifference against Carrillo based on his race, thereby denying him his equal employment opportunities in violation of the Civil Rights Act.

28. The Foundation employs over 500 employees worldwide.

29. The Foundation is aware of Federal anti-discrimination laws, having implemented a policy complaint procedure 'to ensure equal employment opportunity to all individuals without discrimination.' The Foundation willfully violated the both anti-discrimination laws and its own stated policy in its treatment of Carrillo.

30. As a result of the Foundation's discriminatory acts, Carrillo has been damaged in an amount to be proven at trial, but no less than $500,000.

## SECOND CLAIM
### (New York State Human Rights Law)

31. Carrillo realleges paragraphs 1 - 30 as if set forth herein.

32. The Foundation's acts described herein constitute willful discrimination against Carrillo based on his race, thereby denying him his equal employment opportunities in violation of NYSHRL.

33. As a result of the Foundation's discriminatory acts, Carrillo has been

damaged in an amount to be proven at trial, but not less than $500,000.

### THIRD CLAIM
### (Breach of Contract)

34. Carrillo realleges paragraphs 1 - 33 as if set forth herein.

35. On or about March 11, 1996, Carrillo and the Foundation entered into an employment contract (the "Contract"). The Contract term was one year; the Contract was renewed annually by the parties each October 1st, including on October 1, 2005, to expire on September 30, 2006. Copies of the Contract and subsequent renewals are attached hereto as Exhibit C.

36. Under the terms of the Contract, Carrillo's continued employment was subject only to compliance with the Foundation's policies and procedures. The Contract does not allow at-will termination of Carrillo.

37. Foundation breached the Contract when it terminated Carrillo without just cause.

38. As a result of the Foundation's breach, Carrillo has been damaged in an amount to be proven at trial, but not less than $165,000.00.

WHEREFORE, plaintiff Joseph Carrillo demands judgment as follows:

### On Plaintiff's First Claim:

1) Declaring that defendant Foundation discriminated against plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 et. seq.;

2) Ordering defendant to reinstate plaintiff in a comparable position with full

9

seniority, back pay plus interest thereon and pension rights and other benefits, or, in the alternative, awarding plaintiff back pay plus interest thereon and front pay;

3) Awarding plaintiff compensatory and punitive damages pursuant to 42 U.S.C. § 1981a(b)(3)(B);

4) Awarding plaintiff attorneys fees and costs pursuant to 42 U.S.C. 2000e-5(k) and 42 U.S.C. 1988.

### On Plaintiff's Second Claim:

5) Awarding plaintiff damages for lost compensation in the amount of $165,000; and

6) Awarding compensatory damages in the amount of $500,000.

### On Plaintiff's Third Claim:

7) Awarding damages in the amount of $165,000;

And such other and further relief as to this Court seems just.

Dated: New York, New York
April 21, 2006

> GOETZ FITZPATRICK LLP
> Attorneys for Plaintiff
>
> By: _/s/ Jack L. Most_
> Jack L. Most
> One Penn Plaza, Suite 4401
> New York, New York 10119
> (212) 695-8100

10

## **VERIFICATION**

STATE OF NEW YORK   )
                    ) ss.:
COUNTY OF NEW YORK  )

Joseph Carrillo, being duly sworn, states: I am the plaintiff in the above action. I have read the foregoing Verified Complaint and knows its contents thereof; the same is true to my knowledge, except as to the matters therein stated to be alleged upon information and belief and, as to those matters, I believe them to be true.

The foregoing statements are true under penalties of perjury.

_____
Joseph Carrillo

Sworn to before me this
April 21, 2006

_____
Notary Public

DAVID A KUEHN
Notary Public, State of New York
No. 02KU6135094
Qualified in New York County
Commission Expires Oct. 11, 2009

W:\dkuehn\Carrillo\Pleadings\Carrillo Verified Complaint.wpd

11

UNITED STATES
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
------------------------------------------------------------------X
JOSEPH CARRILLO,

                Complainant,        EEOC CHARGE NO.

- against -                         **COMPLAINT**

THE FORD FOUNDATION,

                Respondent.
------------------------------------------------------------------X

1:     Complainant Joseph Carrillo resides at 16 Edgemont Road, Glen Rock, New Jersey 07452, telephone number (201) 447-6690.

2:     Respondent The Ford Foundation ("Foundation") is a Michigan not for profit corporation doing business in New York with a principal place of business at 320 East 43rd Street, New York, New York 10017, telephone number (212) 573-5000.

3:     The Charge herein is based on discrimination because of the Complainant's race by Respondent, which took place in New York County, New York.

4:     Complainant, a white male, began his career with Foundation nearly 10 years ago, as the Building Services Manager. Complainant always received outstanding performance evaluations and accomplishment assessments, obtaining the highest rating used by Respondent.

5:     Complainant was discharged on November 2, 2005, being the date of the wrongful termination based on discrimination.

6.:     Sandra Harris, an African-American and the supervisor of Complainant's immediate supervisor, terminated his employment because of an alleged technical violation of a Foundation procedure. That reason was completely pretextual. At all times, Complainant acted in compliance with departmental practices established and exemplified by Hank DePerro, Manager, Facilities Management, his immediate supervisor. One of Complainant's subordinates, Garfield Morris (Manager of Mail Services), an African-American, was neither terminated nor reprimanded for his participation in the alleged violation activity resulting in Complainant's termination.

7.:     When African-American employees had problems with their performance, Complainant was directed to follow established Human Resources procedures and give them multiple opportunities to improve, including developing plans for performance, identifying areas for improvement, additional coaching, and probation where necessary. None of these established Human Resources procedures were followed in Complainant's case and alleged breach of procedures.

8:   The Complainant was denied his rights under Article 15, § 296 of the New York State Human Rights Law and Title 42, United States Code, § 2000e-2.

9:   There is no other action, civil or criminal, instituted similar to this claim.

10:  Complainant requests expeditious issuance of a "right to sue" letter so that he may proceed with an action at law in which he may join a prayer for relief of the violations complained of herein with an action against the Respondent for breach of his employment contract.

WHEREFORE, Joseph Carrillo, by his attorneys Goetz Fitzpatrick LLP, respectfully demands that the Respondent make Complainant whole, together with such compensatory and punitive damages, along with attorneys' fees, as shall be allowed by law.

Dated: New York, New York
       February 8, 2006

GOETZ FITZPATRICK LLP

By: _____
    Jack L. Most
One Penn Plaza, Suite 4401
New York, New York 10119
(212) 695-8100

W:\dkuehn\Carrillo\EEOC Complaint.doc

UNITED STATES
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

JOSEPH CARRILLO,

Complainant,

Index No.                Year

-against-

THE FORD FOUNDATION,

Respondent.

---

COMPLAINT

---

Signature (Rule 130-1.1-a)

Print name beneath

---

**GOETZ FITZPATRICK LLP**
Attorneys for Complainant, Joseph Carrillo
*Office and Post Office Address; Telephone*
ONE PENNSYLVANIA PLAZA, SUITE 4401
NEW YORK, NEW YORK 10119-0196
(212) 695-8100

---

To

Attorney(s) for

---

Service of a copy of the within is hereby admitted.
Dated,

Attorney(s) for

---

NOTICE OF ENTRY

PLEASE take notice that the within is a (certified) true copy of a duly entered in the office of the clerk of the within named court on

Dated,

Yours, etc.

**GOETZ FITZPATRICK LLP**
Attorneys for
*Office and Post Office Address*
ONE PENNSYLVANIA PLAZA, SUITE 4401
NEW YORK, NEW YORK 10119-0196

To

Attorney(s) for

---

NOTICE OF SETTLEMENT

PLEASE take notice that an order of which the within is a true copy will be presented for settlement to the Hon. one of the judges of the within named Court, at on
at                   M.
Dated,

Yours, etc.

**GOETZ FITZPATRICK LLP**
Attorneys for
*Office and Post Office Address*
ONE PENNSYLVANIA PLAZA, SUITE 4401
NEW YORK, NEW YORK 10119-0196

To

Attorney(s) for